Robert Dewey GLOCK, Petitioner–
Appellant,

v.

Harry K. SINGLETARY, Respondent–
Appellee.

No. 91–3528.

United States Court of Appeals,
Eleventh Circuit.

Sept. 8, 1995.

Martin J. McClain, Chief Asst. Capital Collateral Representative, Gail E. Anderson, Office of the Capital Collateral Representative, Tallahassee, FL, for appellant.

Robert J. Landry, Asst. Atty. Gen., Dept. of Legal Affairs, Tampa, FL, for appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges.*

* Judge Barkett recused herself and did not partici-

COX, Circuit Judge:

Robert Glock appeals the district court's denial of his 28 U.S.C. § 2254 petition for relief from a conviction and death sentence. A panel of this court granted relief from the sentence based on Glock's claim that the trial court's jury instructions were unconstitutionally vague, in violation of his Eighth Amendment rights as interpreted by *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). *Glock v. Singletary*, 36 F.3d 1014 (11th Cir.1994), *vacated*, 51 F.3d 942 (11th Cir.1995). The panel denied relief on the merits of Glock's only challenge to his conviction, which was that the admission into evidence of a confession he made together with his codefendant violated his Confrontation Clause rights under *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). The en banc court decided to review the case to consider whether the nonretroactivity principle of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precluded relief under either *Espinosa* or *Cruz*. Concluding that *Teague* bars the retroactive application of *Espinosa*, and that Glock merited no relief on the *Cruz* claim in any event, we affirm the district court's denial of relief from the conviction and the denial of relief from the sentence based on the *Espinosa* claim. We remand the case to the panel for consideration of Glock's other challenges to his sentence, which the panel did not address.

## I. Background

Glock and his codefendant, Carl Puiatti, were convicted in Florida of the first-degree murder, kidnapping, and robbery of Sharilyn Ritchie. The Florida Supreme Court described the evidence against Glock as follows:

[O]n August 16, 1983, the woman victim arrived at a Bradenton shopping mall. As she exited her automobile, Puiatti and Glock confronted her, forced her back inside the car, and drove away with her. They took $50 from her purse and coerced her into cashing a $100 check at her bank. They then took the victim to an orange grove outside Dade City[,] where they took

pate in this decision.

the woman's wedding ring and abandoned her at the roadside. After traveling a short distance, the appellants determined that the woman should be killed, and they returned in the car to her. When the car's window came adjacent to the woman, Puiatti shot her twice. The appellants drove away, but when they saw she was still standing, they drove by the victim again and Glock shot her. When the woman did not fall, the appellants made a third pass with the automobile, Glock shot her another time, and the woman collapsed. *Puiatti v. State,* 495 So.2d 128, 129 (Fla. 1986).

Following their arrest, Puiatti and Glock made separate statements, each attributing to the other the decision to kill Ritchie and the final shot that felled her. A few days later, law enforcement officers interviewed Puiatti and Glock together. In this joint interview, which was recorded by a court reporter, Puiatti began the interview, stating that the murder was Glock's idea, but that Puiatti had agreed to it. Glock then described the shootings. Glock and Puiatti agreed that Puiatti had fired the first three shots, and that Glock had fired the last shot. At the end, the two men agreed that the entire statement accurately recounted the incident.

Glock and Puiatti were tried together. At the penalty phase of their trial, all three confessions—Glock and Puiatti's joint interview and their individual statements—were admitted in evidence. The trial court instructed the jury to disregard the individual statements to the extent each statement implicated the other defendant. However, no limiting instruction was requested or given with respect to the joint confession. The jury found Glock and Puiatti guilty of first-degree murder, kidnapping, and robbery with a firearm.

At the sentencing phase of the trial, the judge instructed the jury concerning five statutory aggravators that the jury could weigh against any mitigating circumstances. One of the aggravators was that the murder was "especially wicked, evil, atrocious, or cruel" (the "HAC factor"). *See* Fla.Stat.Ann. § 921.141(5)(h) (West Supp.1995).[1] The judge did not give the jury the Florida Supreme Court's narrowing construction of this aggravator, which is that it refers to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The jury recommended the death penalty.[2]

In the trial judge's subsequent reweighing of the aggravating and mitigating circumstances, the judge found as aggravating circumstances that the murder was committed for the purpose of avoiding lawful arrest, for pecuniary gain, and in a cold, calculated, and premeditated manner. The judge rejected the HAC factor, however. He reasoned that although the facts supported the HAC factor, the same facts also supported the "cold, calculated, and premeditated" aggravating factor, and that the latter was more appropriate. Weighing these aggravating circumstances against the statutory mitigating circumstance of Glock's lack of criminal history and the nonstatutory mitigators of Glock's

---

1. The statute itself reads "especially heinous, atrocious, or cruel." The other aggravators were that the murder was committed (1) while the defendant was engaged in the commission, the attempted commission, of the crime of kidnapping; (2) for the purpose of avoiding a lawful arrest; (3) for pecuniary gain; (4) and in a "cold, calculated, and premeditated manner without any pretense of moral or legal justification." Fla.Stat.Ann. § 921.141(5)(d), (e), (f), (i) (West Supp.1995).

2. Florida has a trifurcated death-sentencing procedure. First, the jury weighs aggravating and mitigating circumstances and by majority vote recommends a sentence of life or death. Fla. Stat.Ann. § 921.141(2) (West 1985). Second, the trial court reweighs aggravators and mitigators and sentences the defendant, making written findings as to aggravating and mitigating circumstances if the court imposes the death penalty. *Id.* § 921.141(3). Although by statute the trial court's sentencing is independent, the Florida Supreme Court has construed the statute to require the court to accord the jury's recommendation great weight. *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975). Third, the death-sentenced defendant may appeal by right to the Florida Supreme Court, which itself may reweigh the aggravating and mitigating circumstances. Fla. Stat.Ann. § 921.141(4); *State v. Dixon,* 283 So.2d 1, 10 (Fla.1973).

confession and amendability to rehabilitation,[3] the trial court sentenced Glock to death.

On appeal, the Florida Supreme Court affirmed. *Glock v. State*, 495 So.2d 128 (Fla. 1986). Glock then sought relief on sixteen claims under Florida Rule of Criminal Procedure 3.850, among other things challenging both the vague jury instruction on the HAC factor and the admission of the joint confession. The rule 3.850 petition was denied both by the state circuit court and the Florida Supreme Court. *Glock v. Dugger*, 537 So.2d 99, 102 (Fla.1989). Glock then filed this petition under 28 U.S.C. § 2254, raising the same sixteen claims he raised in the state collateral proceeding. The district court denied relief, *Glock v. Dugger*, 752 F.Supp. 1027 (M.D.Fla.1990), and granted Glock a certificate of probable cause to appeal.

A panel of this court affirmed the district court's denial of relief on Glock's claim that the admission of the joint confession violated his Confrontation Clause rights under *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), finding any error to be harmless. *Glock v. Singletary*, 36 F.3d 1014, 1021 (11th Cir.1994). The court found *Cruz* to be retroactively applicable because the Florida Supreme Court had followed it in the rule 3.850 proceeding, making it the "law of the case." *Id.* at n. 15. However, explicitly relying on *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), the panel reversed the district court's denial of relief on Glock's claim that the jury instructions on the HAC factor violated the Eighth Amendment. *Id.* at 1027. It recognized that *Espinosa* issued after Glock's conviction became final, but it reasoned that because the Florida sentencing scheme addressed in *Espinosa* predates the finality of Glock's conviction, the nonretroactivity rule did not bar the retroactive application of *Espinosa*'s ruling. *Id.* at 1026 n. 26.

The State filed a suggestion for rehearing en banc, and this court voted the case en banc to reconsider the retroactivity analysis on both claims. We conclude that relief under *Espinosa* is barred by the nonretroactivity principle. Although we reject the panel's reasoning as to the retroactive application of *Cruz*, we conclude that an extensive retroactivity analysis is unnecessary because Glock merits no relief under either *Cruz* or pre-*Cruz* law. Accordingly, we affirm the district court's denial of relief from the conviction and the denial of relief from the sentence based on *Espinosa*. The panel did not address Glock's remaining challenges to his sentence because it granted relief on the *Espinosa* claim, *id.* at 1025, and we therefore remand the remaining claims challenging his sentence to the panel.

## II.  Issues and Standard of Review

The en banc court directed the parties to address two primary issues. The first is whether *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 384 (1989), bars the retroactive application of *Espinosa* to Glock's claim that the jury instruction regarding the HAC factor was inadequate. The second is whether *Teague* bars the retroactive application of *Cruz* to Glock's claim that introduction of his nontestifying codefendant's confession was constitutional error. Because of our resolution of these two issues, we do not reach the third en banc issue, which was whether Glock merited relief on these claims if *Teague* did not bar them.

■ We consider the retroactive applicability of a constitutional rule de novo. *Nutter v. White*, 39 F.3d 1154, 1156 (11th Cir. 1994).

## III.  Discussion

### A.  The *Espinosa* Claim[4]

■ Glock claims that despite his trial judge's proper reweighing of aggravating

---

3. The trial court did not deem Glock's confession and rehabilitability to be mitigating circumstances, but stated that they weighed in the balance.

4. The State contends that we may not address this claim because Glock has procedurally defaulted by not raising it on direct appeal. We

disagree. When a state denial of relief fairly appears to rest on federal grounds, and the state court does not expressly rely on an independent and adequate state ground (such as a procedural default) for the denial, we may consider the merits of the claim. *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d

and mitigating circumstances, the unrefined HAC jury instruction violated the Eighth Amendment's command, as articulated in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), that capital sentencing procedures minimize the risk of the arbitrary imposition of the death penalty. The same claim, on apparently very similar facts, was made in *Espinosa*. The Supreme Court granted relief, holding that the instruction was unconstitutionally vague, and that "if a weighing State decides to place capital-sentencing authority in two actors rather than one, neither actor must be permitted to weigh invalid aggravating circumstances." *Espinosa*, 505 U.S. at ——, 112 S.Ct. at 2929. This is true, on *Espinosa*'s facts, even when the second sentencer reweighs aggravators and mitigators without taking into account the unconstitutionally vague aggravating circumstance. *See id.* at ——, 112 S.Ct. at 2927. The Court emphasized the deference Florida law requires the trial judge to pay the jury's recommendation. *Id.* at ——, 112 S.Ct. at 2927. Thus, to put *Espinosa*'s rule another way, a *trial* judge in a trifurcated sentencing procedure may not cure the jury's consideration of an invalid circumstance if, as in Florida, the trial judge owes the jury deference.[5] This rule, the State contends, is new.

■ With two narrow exceptions, new rules of constitutional law do not apply retroactively to cases on collateral review. *Penry*

*v. Lynaugh*, 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989); *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) (plurality opinion). Determining whether a rule is "new" for purposes of this rule entails a three-step process. *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). First, the court determines when the petitioner's conviction and sentence became final. Second, the court determines whether the rule the petitioner relies upon was dictated by precedent existing at the time the conviction became final. Finally, if the court concludes the rule is new, the court considers whether the rule falls within either exception to *Teague*'s bar. *Id.*

### 1. The Date of Finality

■ Glock's conviction and sentence became final December 29, 1986. "A state conviction and sentence become final ... when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Id.* The Florida Supreme Court denied Glock's petition for rehearing October 28, 1986. At the time, Supreme Court rules required parties in criminal cases to file certiorari petitions within sixty days of the date of a denial of rehearing from the state court of last resort. Sup.Ct. R. 20.1, .4, 468 U.S. 1253 (1984). Glock did not file a

---

640 (1991). When the last state court to consider the claim summarily denies relief, we look to the last state court to address the claim to determine if it considered Glock's claim procedurally defaulted. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). The last state court to pass on Glock's *Espinosa* claim, the Florida Supreme Court, summarily affirmed the circuit court's denial of relief, *Glock v. Dugger*, 537 So.2d 99, 102 (Fla. 1989), and thus we look to the circuit court's opinion. The circuit court addressed the claim (which was Claim X) thus: "In Claims VIII, IX, X and XI, Mr. Glock claims that his rights were prejudiced by instructions and argument to the jury during the sentencing phase. These claims are without merit and are DENIED." (R.12-App. IV.-n.p.) The rejection of the claim fairly appears to rest on federal constitutional grounds: the court held the claim to be "without merit," and just three paragraphs before this denial of relief, the circuit court explicitly held that a different claim was defaulted for failure to raise

it on direct appeal. Nowhere else in its opinion did the circuit court explicitly rely on any other state ground for denying relief. Therefore, we may consider the claim despite the failure to raise it on direct appeal.

5. In *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Court held that a state *appellate* court may, after concluding that the jury considered an unconstitutionally vague aggravating factor, reweigh the remaining factors to determine if death is still appropriate. *Id.* at 744–47, 110 S.Ct. at 1446–47. This appellate reweighing is permissible even when the appellate court, as in Mississippi, owes the jury sentence a degree of deference. *See Mann v. Dugger*, 844 F.2d 1446, 1448 (11th Cir.1988) (en banc), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989) (describing the Mississippi Supreme Court's role in capital sentencing).

petition for certiorari, and thus his conviction became final on the December 29, 1986 deadline.

### 2. "The Legal Landscape"

Step two of *Teague* analysis requires a federal court to "survey the legal landscape" as of the date of finality to determine if the rule that forms the basis of the petitioner's claim is "new." *Id.* Our survey leads us to conclude that *Espinosa*'s rule is new. Precedent in 1986 did not dictate the rule that in a procedure which divides sentencing responsibility between judge and jury, a trial judge's constitutionally sound reweighing of aggravating and mitigating circumstances does not cure the jury's consideration of an unconstitutionally vague aggravator.

■■■ No single formulation captures the meaning of "new." When the case the petitioner relies upon does not explicitly overrule precedent (and *Espinosa* did not), the case "announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070 (plurality opinion) (emphasis in original); *see Butler v. McKellar*, 494 U.S. 407, 412, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990). Put differently, a rule is not new if "a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Bohlen*, ── U.S. at ──, 114 S.Ct. at 953. Alternately, a case creates a new rule if on the date of finality the case's outcome was "susceptible to debate among reasonable minds," *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217, or if the case represented a development "over which reasonable jurists may disagree," *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990). All of these formulations serve the policies behind the nonretroactivity principle, which are to validate reasonable, good-faith state court interpretations of existing precedent and to preserve the principle of finality in the face of continual reinterpretation of the Constitution. *See Butler*, 494 U.S. at 414, 110 S.Ct.

at 1217; *Teague*, 489 U.S. at 308–10, 109 S.Ct. at 1074–75.

■■■ The Court has made clear that when the opinion announcing the assertedly new rule does not explicitly address retroactivity, the opinion's language has only limited relevance to *Teague* analysis. "[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*." *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217. The core of the analysis, rather, is a review of Supreme Court precedent predating the date of finality to see if it dictated the new rule. *See, e.g., Gilmore v. Taylor*, ── U.S. ──, ──, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993).

■■■ In this review, we keep several principles in mind. First, to "dictate" a result, prior precedent must be specific; it is not enough that it name the general principle from which the assertedly new rule sprang. *See Sawyer*, 497 U.S. at 236, 110 S.Ct. at 2828 (holding that "the principle of reliability in capital sentencing" did not dictate the *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), rule against prosecutorial argument that downplays the jury's sentencing role); *see also Stringer v. Black*, 503 U.S. 222, 231, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992) (applying *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), retroactively, relying both on the established general requirement of individualized sentencing and on the settled "more specific requirement that a sentence based on an improper factor be reassessed with care"). Second, Supreme Court cases that indirectly suggest a result contrary to the assertedly new rule weigh against cases that foreshadow the new rule. *Sawyer*, 497 U.S. at 237, 110 S.Ct. at 2828. Finally, one Supreme Court case suggests that cases that postdate the date of finality but "did not work a change in the law" in favor of criminal defendants may enter into *Teague* analysis to confirm the conclusion that caselaw on the date of finality did not dictate a result. *See Taylor*, ── U.S. at ──, 113 S.Ct. at 2117.

If Supreme Court precedent does not by itself resolve the *Teague* issue, we can look to the opinions of the courts of appeals and state courts. Although the courts of appeals do not "dictate" a particular rule to state courts, *see Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 846, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring), they can provide evidence that the outcome of a case announcing an assertedly new rule was "susceptible to debate among reasonable minds." *Butler*, 494 U.S. at 415, 110 S.Ct. at 1217. Likewise, state court cases can illustrate differences among jurists of reason.[6] "Constitutional law is not the exclusive province of the federal courts, and in the *Teague* analysis the reasonable views of state courts are entitled to consideration along with those of federal courts." *Bohlen*, — U.S. at —, 114 S.Ct. at 956. Prior state or federal court of appeals precedent that agrees with the assertedly new rule, however, is not dispositive. *See Sawyer*, 497 U.S. at 240–41, 110 S.Ct. at 2830–31. In *Sawyer*, the Court held that *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which prohibits prosecutorial jury arguments that downplay the jury's sentencing responsibility, was not retroactively applicable. The Court rejected the argument that prior Louisiana (the state of conviction) precedent comporting with *Caldwell* showed that *Caldwell*'s result was dictated. "To the extent these [Louisiana] cases reflect state-court recognition that general Eighth Amendment principles pointed toward adoption of a *Caldwell* rule, or that *Caldwell* is congruent with pre-existing state law, they cannot serve to show that *Caldwell* was dictated by our Eighth Amendment precedent. State courts as well as federal courts can be expected to engage in application of the principles announced in prior Eighth Amendment decisions that are 'susceptible to debate among reasonable minds.'" *Sawyer*, 497 U.S. at 240–41, 110 S.Ct. at 2830–31. This rationale also explains why federal court of appeals precedent is not dispositive of the *Teague* issue.

*Supreme Court Precedent*

With these principles in mind, we turn to our survey of the caselaw at the end of 1986, when Glock's conviction became final. At that time, the Supreme Court had decided only one case directly addressing the constitutionality of death sentences based on vague aggravating circumstances. In *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), a majority of the Court held that Georgia's vague "outrageously or wantonly vile, horrible, or inhuman" aggravating circumstance ran afoul of the Eighth Amendment's prohibition of capital sentencing procedures that risk arbitrary imposition of the death penalty. In *Godfrey*, as in Glock's case, the jury was instructed in only the bare language of the statute without any further narrowing interpretation. The *Godfrey* Court's plurality opinion, however, was less concerned with the jury's consideration of an unconstitutionally vague aggravator than with the Georgia Supreme Court's failure to review and check the jury's unchanneled discretion. As the plurality wrote, "[t]he standardless and unchanneled imposition of death sentences in the uncontrolled discretion of a basically uninstructed jury . . . was in no way cured by the affirmance of those sentences by the Georgia Supreme Court." *Id.* at 429, 100 S.Ct. at 1765. The opinion thus strongly suggests that a *court*

6. Glock contends that Florida law has dictated *Espinosa*'s result since *Tedder v. State*, 322 So.2d 908 (Fla.1975). *Tedder* was the first case to hold that a trial judge must give the jury's recommendation great weight in her reweighing of aggravating and mitigating circumstances. *Id.* at 910. This holding, according to Glock, dictated *Espinosa*'s rule that reweighing by the trial judge does not cure the jury's weighing of an unconstitutionally vague aggravating circumstance. Glock has confused the state-law premise of *Espinosa*'s rule with the constitutional rule itself. *Tedder*'s rule is not one of constitutional law. *See Harris v. Alabama*, — U.S. —, —, 115 S.Ct. 1031, 1034, 130 L.Ed.2d 1004 (1995). Rather, *Tedder*'s rule represents the condition of state law that formed the basis of *Espinosa*'s rule of constitutional law. Although the Supreme Court has not addressed Glock's contention directly, it has repeatedly written that *Teague* analysis concerns *constitutional* rules, not the state law to which those constitutional rules apply. *See, e.g., Fretwell*, — U.S. at —, 113 S.Ct. at 844; *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075 (plurality opinion). Thus, the fact that Florida law has not changed materially since 1975 is irrelevant to the question whether *Espinosa* is retroactively applicable.

may satisfy the Eighth Amendment demand of principled and consistent death sentencing by itself narrowing the class of murders defined by the statutory aggravating circumstance. This suggestion is at best ambiguous as to *Espinosa*'s issue, and it may even point toward the opposite result from *Espinosa*. *Godfrey* does not, therefore, dictate *Espinosa*'s result.

*Godfrey*'s ambiguity on the *Espinosa* issue is not resolved by viewing *Godfrey* through the lens of Supreme Court application of the Eighth Amendment to Florida's trifurcated death sentencing procedure. In 1986, the Court had considered the jury's role in this context only twice. In *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Court upheld Florida's scheme against a facial attack on its constitutionality under the Eighth Amendment. The plurality opinion concluded that Florida had successfully limited the risk of arbitrary imposition of the death penalty. The plurality particularly noted that the judge's role in Florida sentencing procedure ensures adequately guided sentencing. *Id.* at 252, 96 S.Ct. at 2966. This language does not just fail to dictate *Espinosa*'s result, when considered with *Godfrey*; it suggests the contrary. If Florida's system survives Eighth Amendment scrutiny *because* the trial court revisits the jury's recommendation, it could sensibly follow that the judge's proper review of the sentence cures any risk of arbitrariness occasioned by the jury's consideration of an unconstitutionally vague aggravating circumstance. Thus, *Proffitt* not only fails to dictate *Espinosa*'s rule; it weighs against cases that may foreshadow *Espinosa*.

The Supreme Court revisited Florida's trifurcated procedure in *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). The relevant part of *Spaziano* addressed the issue whether a trial judge may constitutionally override a jury's recommendation of life imprisonment. The Court refused to interpret the Eighth Amendment to require jury sentencing, reasoning that the Amendment's dual commands of consistent and individualized sentencing did not require the jury's participation. *Id.* at 459–61, 104 S.Ct. at 3161–62. The holding and the rea-

soning behind *Spaziano* say little to the *Espinosa* issue. The opinion's acknowledgement of the Eighth Amendment's basic commands and its recognition of the jury's significant role, *id.* at 462, 104 S.Ct. at 3163, offer no more than general principles that alone cannot dictate *Espinosa*'s rule.

The Supreme Court's consideration of other states' trifurcated procedures likewise did not dictate *Espinosa*'s result. The most important of these other cases is *Baldwin v. Alabama*, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). Alabama, like Florida, has a trifurcated sentencing procedure. Under the Alabama scheme enacted in 1975 and repealed in 1981, the jury was required automatically to "sentence" the defendant to death if it found the defendant guilty of one of fourteen aggravated offenses. *Id.* at 375, 105 S.Ct. at 2730. This jury "sentence" triggered a sentencing hearing before the trial judge, who heard evidence relating to aggravating and mitigating circumstances. Based on this evidence, the judge weighed mitigating and aggravating circumstances and actually sentenced the defendant to death or life imprisonment without parole. *Id.* at 376, 105 S.Ct. at 2730.

The petitioner in *Baldwin* asserted that this Alabama statute was unconstitutional on its face because it prevented the jury's individualization of his sentence, in violation of the principles of *Woodson v. North Carolina*, 428 U.S. 280, 301, 96 S.Ct. 2978, 2989, 49 L.Ed.2d 944 (1976). The Court rejected the claim, concluding that the trial judge's actual sentence was so divorced from the jury's "sentence" that the jury's lack of discretion did not infect the whole proceeding. *See Baldwin*, 472 U.S. at 382, 105 S.Ct. at 2733. The Court cautioned, however, that the petitioner's argument "conceivably might have merit if the judge actually were required to consider the jury's 'sentence' as a recommendation as to the sentence the jury believed would be appropriate, cf. *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and if the judge were obligated to accord some deference to it." *Id.* Although *Baldwin*'s guarded dictum may have foreshadowed *Espinosa*'s holding seven years later, it does not by itself dictate *Espinosa*'s

result. This language must be considered rather against *Godfrey*'s more on-point suggestion that later judicial review can cure the jury's exercise of unbridled discretion.

Thus, caselaw predating the finality of Glock's conviction did not compel *Espinosa*'s result. Later cases do not call into question this conclusion. We consider Supreme Court cases issued after the date of finality, but only if we are confident that they did not change the law in favor of defendants. *See Taylor*, —— U.S. at ——, 113 S.Ct. at 2117. The Supreme Court has explicitly held that two relevant post–1986 cases are retroactively applicable, *Stringer*, 503 U.S. at 231, 112 S.Ct. at 1137, and we are therefore confident that we may examine them to see if they confirm the conclusion that pre–1986 caselaw did not require *Espinosa*'s result. The two cases, *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), both concerned the sentencing jury's improper consideration of the HAC factor. *Cartwright* held that an Oklahoma sentencing jury's weighing of the HAC factor without a narrowing instruction violated the rule of *Godfrey*, and that the constitutional error was not cured because Oklahoma law prohibited the state appeals court from reweighing aggravating and mitigating circumstances. *Cartwright*, 486 U.S. at 359, 364, 108 S.Ct. at 1857, 1859. The opinion tracked *Godfrey*, and thus it did not hint that judicial reweighing of constitutionally sound aggravating and mitigating factors would not, in some circumstances, cure the jury's consideration of a vague factor.

Neither does *Clemons* show that caselaw extant in 1986 compelled *Espinosa*'s result. In *Clemons*, as in *Cartwright*, the jury was given insufficient guidance in interpreting the HAC factor. Unlike Oklahoma, however, Mississippi permits its supreme court to reweigh aggravating and mitigating circumstances. Although the Mississippi Supreme Court had failed to reweigh explicitly in *Clemons*, the U.S. Supreme Court ruled that the practice of appellate reweighing to cure *Godfrey* error in jury proceedings comported with constitutional commands. *Clemons*, 494

U.S. at 745–46, 110 S.Ct. at 1446–47. *Clemons*'s holding, which arguably points in the opposite direction from *Espinosa*, indicates that even in 1990 *Espinosa*'s result would not have been dictated by precedent.

We thus conclude that relevant Supreme Court precedent—*Godfrey*, its progeny, and cases concerning trifurcated sentencing schemes—did not dictate *Espinosa*'s result in 1986.

### Eleventh Circuit Precedent

Four Florida capital habeas cases from this circuit well illustrate that *Espinosa*'s outcome was "susceptible to debate among reasonable minds." *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217.

First, in *Proffitt v. Wainwright*, 756 F.2d 1500 (11th Cir.1985) (*Proffitt II*), the petitioner claimed that his resentencing, which was mandated by this court in *Proffitt v. Wainwright*, 685 F.2d 1227 (11th Cir.1982) (*Proffitt I*), required a jury. The petitioner had been resentenced by a judge alone. The petitioner asserted that *Proffitt I* contained a finding of error that the HAC jury instruction was unconstitutionally vague, and that this error could be corrected only by a jury sentencing proceeding. In denying relief on this claim, the *Proffitt II* court first observed the effect of *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984): "[T]he Court's reasoning calls into question whether any given error in such a merely 'advisory' proceeding should be considered to be of constitutional magnitude." *Proffitt II*, 756 F.2d at 1502. The court went on more specifically to reject the contention that *Proffitt I*'s concern over the vagueness of the HAC jury instruction was a finding of error at all. In the words of the court, "the reference [to the jury instructions] reflects a concern that has since been held by the Supreme Court to be unnecessary." *Id.* at 1503. *Proffitt II* did not address the *Espinosa* issue, but its dictum and this holding show that reasonable minds could believe that a case such as *Espinosa* would produce a holding opposite to *Espinosa*'s.

*Hargrave v. Wainwright,* 804 F.2d 1182 (11th Cir.1986),[7] illustrates even more clearly that in 1986 *Espinosa*'s result was susceptible to debate among reasonable minds. In *Hargrave,* as in Glock's case, the jury was not given the constitutionally acceptable narrowing definition of the HAC factor. *Id.* at 1192. The trial judge's findings of fact as to the HAC factor, however, showed that the judge considered the torturous aspect of the murder in concluding that the facts supported the HAC factor. *See id.* at 1193. The Florida Supreme Court affirmed the sentence. *Id.* The petitioner claimed that neither the trial judge nor the Florida Supreme Court had employed a sufficiently narrow construction so as to cure the improper jury instruction. *Id.* at 1193–94. After reviewing the trial court and Florida Supreme Court opinions, this court concluded that a properly narrow definition was used. *Id.* at 1195. While it is true that the precise *Espinosa* issue was not raised before it, the *Hargrave* court gave no sign that the error in the jury instructions might be, as *Espinosa* held, incurable by later judicial review. Indeed, in a footnote the court observed that the error of giving the jury a vague instruction as to the HAC factor "was rendered harmless by the trial court's findings." *Id.* at 1196 n. 33.

Finally, a 1989 Eleventh Circuit case conflicts with the rule later adopted in *Espinosa.*[8] The petitioner in *Bertolotti v. Dugger,* 883 F.2d 1503 (11th Cir.1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990), challenged his sentence on the ground that the trial court failed to instruct the jury in an adequately narrowed construction of the HAC factor. *Id.* at 1526. This court rejected the claim, pointing to the trial judge's explicit consideration of the torturousness of the crime. *Id.* at 1527. The court concluded that the trial judge's consideration satisfied the Eighth Amendment's requirement that aggravating factors distin-guish "this case, in which the death penalty was imposed, from the many cases in which it was not." *Id.* (quoting *Godfrey,* 446 U.S. at 433, 100 S.Ct. at 1767).

We know of no Eleventh Circuit case from this time whose holding viewed *Espinosa*'s result as required by Supreme Court precedent. However, dictum in one case arguably did take this view. In *Adams v. Wainwright,* 764 F.2d 1356, 1364 (11th Cir.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986), the petitioner challenged the jury instructions at the sentencing phase. The trial judge had instructed the jury in Florida's aggravating factor that the murder occurred during the commission of rape or kidnapping. However, the judge failed to define either "rape" or "kidnapping." The petitioner claimed that the lack of definitions violated due process. This court rejected that contention, holding that "the incomplete jury instruction did not so infect the entire sentencing proceeding that the penalty ultimately imposed violate[d] the petitioner's due process rights." *Id.* The court also rejected, however, "the broad notion that the merely advisory role of the sentencing jury under Florida law renders *any* given error in a sentencing proceeding nonconstitutional in stature." *Id.* Although the holding does not anticipate *Espinosa,* this dictum may.

Thus, relevant Eleventh Circuit cases from the time may not all flatly contradict *Espinosa*'s holding, but neither do they, as a whole, show that Supreme Court precedent at the time dictated *Espinosa*'s result.

### Florida Precedent

Florida cases also suggest that *Espinosa*'s result was not required by pre–1986 Supreme Court precedent. *Cf. Bohlen,* —— U.S. at ——, 114 S.Ct. at 956. The appellant has cited no Florida cases, and we have found none, that directly anticipate *Espino-*

7. The *Hargrave* opinion was vacated pending hearing en banc. *Hargrave v. Wainwright,* 809 F.2d 1486 (11th Cir.1987). However, this does not affect its place in *Teague* analysis, since court of appeals precedent does not dictate rules for *Teague* purposes; it merely illustrates differing reasonable opinions as to the state of the law at a given time. *See Butler,* 494 U.S. at 415, 110 S.Ct. at 1217.

8. Although *Bertolotti* postdates the day Glock's conviction became final, it was decided in essentially the same state of law as the pre–1986 cases. See the discussion of Supreme Court precedent, above.

*sa.* Indeed, even five years after Glock's conviction became final, the Florida Supreme Court explicitly denied relief on a claim based on *Cartwright,* 486 U.S. at 356, 108 S.Ct. at 1853. In *Smalley v. State,* 546 So.2d 720, 722 (Fla.1989), the appellant contended that Florida's HAC factor, like Oklahoma's, was unconstitutionally vague. The court rejected the argument, observing that

> [i]t is true that both the Florida and Oklahoma capital sentencing laws use the phrase "especially heinous, atrocious, or cruel." However, there are substantial differences between Florida's capital sentencing scheme and Oklahoma's. In Oklahoma the jury is the sentencer, while in Florida the jury gives an advisory opinion to the trial judge, who then passes sentence. The trial judge must make findings that support the determination of all aggravating and mitigating circumstances. Thus, it is possible to discern upon what facts the sentencer relied in deciding that a certain killing was heinous, atrocious, or cruel.

*Id.* at 722. This case shows that Florida courts no more considered *Espinosa*'s result inevitable under Supreme Court precedent than did the Eleventh Circuit.

Glock relies upon two Florida cases to contend that *Teague* does not bar relief on his *Espinosa* claim. First, he contends that Florida's retroactive application of *Espinosa* obviates the need for federal *Teague* analysis. In *James v. State,* 615 So.2d 668, 669 (Fla.1993), the Florida Supreme Court held that "it would not be fair to deprive" a petitioner for collateral relief the benefit of *Espinosa* if the petitioner raised the vagueness of the HAC jury instruction as an issue on appeal.[9] Glock asserts that the retroactivity bar is unnecessary because *Teague*'s comity concerns would not arise if federal courts followed state courts in applying a new rule retroactively. We are unpersuaded, however, that Florida's retroactive application of *Espinosa* in another case permits us to ignore *Teague.* When Glock challenged the jury instruction before the Florida courts, they denied relief. It is that denial

that *Teague* requires the federal courts to respect. *See Teague,* 489 U.S. at 310, 109 S.Ct. at 1061.

Glock also relies upon *Riley v. Wainwright,* 517 So.2d 656 (Fla.1987). In *Riley,* the Florida Supreme Court held that the jury's failure to consider some relevant mitigating evidence, in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), was constitutional error despite the Florida jury's advisory role. *Riley,* 517 So.2d at 658. Glock is correct insofar as he argues that this holding shows that *Espinosa* was not inconceivable at the time Glock's conviction became final. However, this one case, when weighed against the other, more factually similar Florida case pointing in the opposite direction, does not by itself show that the Florida Supreme Court thought that *Espinosa*'s result was dictated by Supreme Court precedent. At best, *Riley* shows that there was a difference of opinion as to whether Florida's unique sentencing procedure affects the application of the Eighth Amendment to it.

In sum, the legal landscape in 1986, and for several years thereafter, was uncertain as to whether the Florida trial judge's reweighing of aggravating and mitigating circumstances could cure *Godfrey* error before the jury. Supreme Court caselaw suggested that a court could cure error at the jury stage, and Eleventh Circuit cases show that courts at the time read Supreme Court precedent that way. Florida cases likewise do not indicate that state courts believed that under Supreme Court precedent the trial judge's reweighing could not cure *Godfrey* error. *Espinosa*'s rule is new, therefore, and unless an exception to the *Teague* rule applies, *Espinosa* is not retroactively applicable. *Penry,* 492 U.S. at 314, 109 S.Ct. at 2944. Hence we now turn to the possible exceptions.

### 3. Exceptions

*Teague*'s bar on the retroactive application of new rules has two exceptions. The first is

---

**9.** Nothing in *James* suggests that the Florida Supreme Court borrowed or applied the *Teague* doctrine, which does not apply to state courts. It is also far from clear that Glock would get relief

under *James*'s retroactivity rule, because unlike James, Glock did not raise the vagueness of the jury instruction as an issue on direct appeal.

for new rules "that place an entire category of primary conduct beyond the reach of the criminal law." *Sawyer*, 497 U.S. at 241, 110 S.Ct. at 2831. Glock does not claim that *Espinosa*'s rule renders his conduct innocent. He does, however, claim *Teague*'s second exception, which is for new " 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990)).

▮ Glock contends that *Espinosa* error falls within the second exception because a vague instruction renders the jury's decision inaccurate and unreliable. This argument echoes that of the petitioner in *Sawyer*. Sawyer asserted that the rule of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), fell within the second exception because its prohibition on prosecutorial minimization of the jury's role improved the accuracy of the trial. The Supreme Court rejected this argument: "A rule that qualifies under this exception must not only improve accuracy, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at 242, 110 S.Ct. at 2831 (internal quotation omitted). The Court added that "[i]t is unlikely that many such components of basic due process have yet to emerge." *Id.* at 243, 110 S.Ct. at 2832 (internal quotation omitted).

▮ *Espinosa*'s rule does not meet these qualifications. The Court has offered *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as an example of a bedrock procedural rule. *Espinosa*'s rule has none of the "primacy and centrality" of *Gideon*'s. *Cf. Saffle*, 494 U.S. at 495, 110 S.Ct. at 1264. *Espinosa*'s requirement that neither jury nor judge consider an impermissibly vague aggravating factor enhances the reliability of the capital sentencing decision, but it does not call into question the fairness of the trial in so great a degree as the absence of defense counsel. Under Florida law, the appropriateness of a sentence is twice reconsidered, once by the trial court and again by the Florida Supreme Court. Furthermore, although the impermissibly vague factor does

not channel the jury's discretion to find a factor to be applicable, neither does it prohibit the defense from arguing before the jury that a particular crime does not fall within the factor. Thus, *Espinosa* does not fall within *Teague*'s second exception.

### 4. Conclusion of the Teague Analysis

Because precedent existing at the time Glock's case became final did not dictate the result of *Espinosa*, and no exception to the nonretroactivity rule applies, Glock is not entitled to the benefit of *Espinosa*'s rule. *Penry*, 492 U.S. at 314, 109 S.Ct. at 2944.

### B. The Cruz Claim

Glock contends that the introduction of the interlocking confession of his nontestifying codefendant Puiatti violated Glock's Sixth Amendment Confrontation Clause rights as explicated in *Cruz v. New York*, 481 U.S. 186, 189, 107 S.Ct. 1714, 1717, 95 L.Ed.2d 162 (1987). However, *Cruz* was not released until after Glock's conviction became final, and the State asserted a *Teague* bar to application of the *Cruz* rule in this case. Because the Florida Supreme Court had applied *Cruz* to this case in the state collateral proceeding, the panel held that "*Cruz* is the law of the case as it comes to us; thus, there can be no *Teague* bar." *Glock*, 36 F.3d at 1021 n. 15. We disagree.

▮ The law of the case doctrine provides that *this* court's prior holdings in a case generally bind the district court on remand and this court in any subsequent appellate proceedings in the same case. *See, e.g., Ellard v. Alabama Bd. of Pardons and Paroles*, 928 F.2d 378, 381 (11th Cir.1991); *United States v. Robinson*, 690 F.2d 869, 872 (11th Cir.1982). The law of the case doctrine does not give state court applications of law any effect in federal courts, *see Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and neither it nor any other doctrine provides an exception to the *Teague* bar when state courts during the collateral review process apply new rules of federal law that were not available at the end of the direct appeal process. States may exercise their collateral review power without regard to the *Teague* doctrine. Their doing so has

no effect on later federal review because the *Teague* "new rule" test freezes the applicable law frame not at the end of the state collateral review process, but at the end of the direct appeal process. *See, e.g., Bohlen,* —— U.S. at ——, 114 S.Ct. at 953. Accordingly, in this case any *Teague* bar to the *Cruz* rule is unaffected by events that occurred after the deadline for filing a petition for writ of certiorari.

■ It is, however, unnecessary for us to proceed further with the *Teague* analysis and determine whether *Cruz* announced a "new rule," or instead whether the result in that case was dictated by prior precedent such as *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), both of which issued before Glock's conviction became final. We agree with the panel's conclusion that any *Cruz* error is harmless, *Glock,* 36 F.3d at 1022–24, and thus it matters not whether we apply *Cruz* or pre-*Cruz* law to this case. Either way, the district court did not err in denying relief on the Confrontation Clause claim.

## IV. Conclusion

For the reasons given above, we AFFIRM the district court's denial of relief from the sentence based on the *Espinosa* claim. We also AFFIRM the denial of relief as to Glock's conviction. We REMAND to the panel for consideration of Glock's remaining claims challenging his sentence.

TJOFLAT, Chief Judge, dissenting, in which KRAVITCH and HATCHETT, Circuit Judges, join:

## I.

During the penalty phase of the Florida capital sentencing scheme, the jury weighs the aggravating circumstances against the mitigating circumstances and recommends either a sentence of death or life imprisonment. *See* Fla.Stat.Ann. § 921.141(2). The statute does not require the jury to make any specific findings regarding the aggravating or mitigating circumstances it finds. Thus, the jury's recommendation is akin to a general verdict in that it does not reveal the basis for the decision. Accordingly, if the jury recommends death, a reviewing court cannot tell from examining the verdict: (1) which aggravating circumstances the jury may have found from the evidence, unless the court submitted only one aggravating circumstance to the jury; (2) which mitigating circumstances the jury may have found; or (3) whether any error in the court's instructions—regarding either aggravating or mitigating circumstances—influenced the jury's death recommendation.

After the jury makes its recommendation, the trial judge weighs the aggravating and mitigating circumstances and imposes the sentence, providing written findings to support a death sentence.[1] *See id.* § 921.141(3). The statute characterizes the jury's recommendation as an "advisory sentence." *See id.* § 921.141(2). Nevertheless, Florida caselaw requires that the trial judge give "great weight" to the jury's recommendation of life imprisonment, *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975) (per curiam), or death, *Smith v. State,* 515 So.2d 182, 185 (Fla.1987), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1249, 99 L.Ed.2d 447 (1988). The weight assigned to a life recommendation is much greater than that assigned to a death recommendation. A trial judge can override a life recommendation only if "the facts suggesting a sentence of death [are] so clear and convincing that

---

1. In *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), Justice Stevens described the trial judge's function in the Florida capital sentencing model as follows:

    Analytically the trial judge must make three separate determinations in order to impose the death sentence: (1) that at least one statutory aggravating circumstance has been proved beyond a reasonable doubt; (2) that the existing statutory aggravating circumstances are not outweighed by statutory mitigating circum-

stances; and (3) that death is the appropriate penalty for the individual defendant.

*Id.,* 463 U.S. at 961, 103 S.Ct. at 3430–31 (Stevens, J., concurring) (footnote omitted). As Justice Stevens noted, a 1979 amendment to the death penalty statute required the judge to determine whether the statutory aggravating circumstances are outweighed by both statutory and nonstatutory mitigating circumstances. *Id.* at 961 n. 2, 103 S.Ct. at 3430 n. 2.

virtually no reasonable person could differ." *Tedder*, 322 So.2d at 910. Consequently, the jury's recommendation has the effect of placing a thumb[2] on one side of the trial judge's sentencing scale—either on the death side or the life side.

Assume that a jury returns a death recommendation after receiving an erroneous instruction on one or more aggravating or mitigating circumstances. If the trial judge does not recognize the error, he may ultimately sentence the defendant to death without dealing with the error.[3] Alternatively, if the trial judge recognizes the error and finds that it was not harmless, he can seek to eliminate the error either: (1) by explicitly disregarding the thumb from the death side of the scale and giving the jury's recommendation no weight as if the defendant waived his right to a jury in the sentencing phase; or (2) by switching the thumb from the death side to the life side of the scale but then meeting the *Tedder* standard for overriding a life recommendation and imposing the death penalty.

I know of no Florida case in which a trial judge has sought to eliminate the error by either method. A judge who gives the jury's recommendation no weight has essentially converted the jury sentencing process into a bench trial. This is contrary to state law because Florida gives the defendant the right to seek a life recommendation from the jury

and, with that, the heightened protection of *Tedder*. Furthermore, an error in the instruction on an aggravating factor increases the likelihood that the thumb will be placed on the death side of the scale and decreases the possibility that the thumb will be placed on the life side; thus, simply removing the thumb from the death side does not fully compensate for the error because it still denies the defendant his right to seek a life recommendation. The Supreme Court of Florida might, however, affirm a death sentence if the trial judge switched the thumb to the life side of the scale and then satisfied the *Tedder* override standard because the defendant could have suffered no prejudice from the erroneous instruction—that is, the defendant constructively received the best possible outcome from the jury, a life recommendation.

When the Supreme Court of Florida reviews a case in which the jury received an invalid instruction on aggravating or mitigating circumstances, the court cannot determine what effect the error had on the jury's recommendation because, as noted, the jury does not make any findings. The court has three alternatives for disposing of the case: (1) find the error harmless, i.e., that the jury would have recommended death regardless of the error;[4] (2) find the error not harmless and resentence the defendant independent of the tainted trial court sentence;[5] (3) find the

2. The Supreme Court has recognized this "thumb on the scale" analogy in *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). In discussing the effect of the consideration of an invalid aggravating factor during the jury's weighing process, the Court cautioned that "when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale." *Id.* at 232, 112 S.Ct. at 1137.

3. As will become apparent from our discussion in Part III *infra*, this is precisely what occurred in Glock's case.

4. The Supreme Court of Florida has found harmless error when testimony regarding nonstatutory aggravating circumstances was presented to the jury, *Walton v. State*, 547 So.2d 622, 625 (Fla. 1989) (per curiam), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990); when certain aggravating factors were not supported

by the evidence, *Armstrong v. State*, 399 So.2d 953, 963 (Fla.1981) (per curiam) ("The error did not impair the process of weighing the aggravating against the mitigating circumstances because there were no mitigating circumstances to weigh."); and when the trial judge found two aggravating circumstances based on the same evidence or "double counted," *Straight v. State*, 397 So.2d 903, 910 (Fla.) (per curiam) ("Where it is clear that the sentencing judge merely recited both statutory factors without giving improper double consideration to the single aspect in question, or where the absence of mitigating circumstances makes clear that any added weight accorded the factor did not tip the balance in favor of a sentence of death rather than life, the error of a double recitation is harmless."), *cert. denied*, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981).

5. The Supreme Court of Florida has, at times, disputed that it acts as a resentencer. *Hudson v. State*, 538 So.2d 829, 831 (Fla.) (per curiam) ("It

error not harmless and choose not to resentence the defendant,[6] but rather vacate the death sentence and remand the case either for a new sentencing proceeding or, if the record will not sustain the death sentence, the imposition of a life sentence.[7]

The Supreme Court of Florida has remanded a case for a new sentencing proceeding on a number of occasions.[8] In *Elledge v.*

is not within this Court's province to reweigh or reevaluate the evidence presented as to aggravating or mitigating circumstances."), *cert. denied,* 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989); *Brown v. Wainwright,* 392 So.2d 1327, 1331 (Fla.) (per curiam) ("Neither of our sentence review functions, it will be noted, involves weighing or reevaluating the evidence adduced to establish aggravating and mitigating circumstances."), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981); *see also Parker v. Dugger,* 498 U.S. 308, 319, 111 S.Ct. 731, 738, 112 L.Ed.2d 812 (1991) ("[T]he Florida Supreme Court has made it clear on several occasions that it does not reweigh the evidence of aggravating and mitigating circumstances."); *Booker v. Dugger,* 922 F.2d 633, 642 (11th Cir.) (Tjoflat, C.J., specially concurring), *cert. denied,* 502 U.S. 900, 112 S.Ct. 277, 116 L.Ed.2d 228 (1991). Nevertheless, the court has been described, and has described itself, as a resentencer. *See Harris v. Alabama,* — U.S. —, —, 115 S.Ct. 1031, 1034, 130 L.Ed.2d 1004 (1995) ("In Florida, as in Alabama, the reviewing courts must independently weigh aggravating and mitigating circumstances to determine the propriety of the death sentence...."); *Harvard v. State,* 375 So.2d 833, 834 (Fla.1977) ("When the sentence of death has been imposed, it is this Court's responsibility to evaluate anew the aggravating and mitigating circumstances of the case to determine whether the punishment is appropriate."), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979).

Although appellate resentencing deprives the defendant of a possible life recommendation from the jury, Florida law implicitly allows the high court to do so. Nothing in Florida jurisprudence, however, permits the *trial court* to disregard the jury's recommendation—thereby depriving the defendant of a possible life recommendation—and "resentence" the defendant as if he/she had waived a jury trial for the sentencing phase.

6. For example, in *Clemons v. State,* 593 So.2d 1004 (Miss.1992), the Mississippi Supreme Court pursued this course on remand from the Supreme Court in *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (invalidating a Mississippi jury instruction that merely repeated the statutory phrase "especially heinous, atrocious, or cruel"). The supreme court concluded that Mississippi law did not permit it to reweigh the aggravating and mitigating

*State,* 346 So.2d 998 (Fla.1977), the court reviewed a challenge to a death sentence, imposed following a jury recommendation of death, based on the jury's consideration of a nonstatutory aggravating circumstance—another murder charge for which the petitioner had been indicted but not yet convicted. The court discussed the difficulty of divining the impact of the invalid factor given the absence of findings in the jury's verdict:

factors and thereby resentence the defendant because such weighing was the province of the jury. 593 So.2d at 1006. The court then attempted harmless error analysis but was unable to determine beyond a reasonable doubt that the jury verdict would have been the same with an expanded HAC instruction. *Id.* at 1007.

7. For example, in *Parker v. State,* 643 So.2d 1032 (Fla.1994), on remand from the Supreme Court, *Parker v. Dugger,* 498 U.S. 308, 318–19, 111 S.Ct. 731, 738, 112 L.Ed.2d 812 (1991), the Florida Supreme Court, after considering the nonstatutory mitigating circumstances in the case, concluded that trial judge erred in overriding the jury's life recommendation and remanded the case for the imposition of a sentence of life imprisonment.

8. The supreme court has required resentencing before a new jury when psychiatric testimony offered by the defense was improperly excluded, *Simmons v. State,* 419 So.2d 316 (Fla.1982) (per curiam) (requiring new sentencing proceedings despite the trial judge's statement that he would consider such testimony in determining the ultimate sentence); *Miller v. State,* 332 So.2d 65 (Fla.1976) (per curiam) (same); when improper evidence or argument was presented to the jury, *Dougan v. State,* 470 So.2d 697, 701 (Fla.1985) ("We cannot tell how this improper evidence and argument may have affected the jury. We therefore vacate [appellant's] sentence and remand for another complete sentencing hearing before a new jury."), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 900 (1986); *Teffeteller v. State,* 439 So.2d 840, 845 n. 2 (Fla.1983) (per curiam) ("Although a jury's sentencing recommendation is only advisory, it is an integral part of the death sentencing process and cannot properly be ignored."), *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984); and when jury instructions violated *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Floyd v. State,* 497 So.2d 1211, 1216 (Fla.1986) ("In view of the inadequate and confusing jury instructions, we believe [appellant] was denied his right to an advisory opinion. We cannot sanction a practice which gives no guidance to the jury for considering circumstances which might mitigate against death."); *Lucas v. State,* 490 So.2d 943 (Fla.1986) (per curiam).

Would the result of the weighing process by both the jury and the judge have been different had the impermissible aggravating factor not been present? We cannot know. Since we cannot know and since a man's life is at stake, we are compelled to return this case to the trial court for a new sentencing trial at which the factor of the [other] murder shall not be considered. *See Miller v. State,* 332 So.2d 65 (Fla. 1976); *Messer v. State,* 330 So.2d 137 (Fla. 1976). This result is dictated because, in order to satisfy the requirements of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the sentencing authority's discretion must be "guided and channeled by requiring examination of *specific factors* that argue in favor of or against imposition of the death penalty, thus eliminating the total arbitrariness and capriciousness in its imposition."

*Elledge,* 346 So.2d at 1003 (quoting *Proffitt v. Florida,* 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976) (emphasis added)); *see also Hill v. State,* 549 So.2d 179, 183 (Fla.1989) (per curiam) ("[W]e cannot tell with certainty that the result of the weighing process would be the same absent the invalid aggravating factor. . . . [T]here is sufficient doubt relative to the jury's recommendation to warrant a full sentencing trial before a new jury where both parties will be entitled to introduce evidence on aggravating and mitigating circumstances and whether the death penalty should be imposed."). In *Lucas v. State,* 490 So.2d 943, 945 (Fla.1986) (per curiam), the supreme court implicitly concluded that a new jury sentencing procedure would be warranted when improper evidence or instructions may have rendered the

jury's recommendation invalid. Commenting on a prior case, *Menendez v. State,* 419 So.2d 312 (Fla.1982), in which the court remanded for resentencing by the trial court and the trial court held a hearing with additional testimony and argument but without a jury, the court stated:

We approved this procedure sub silentio, but found no error in the trial court's refusal to empanel a new jury because "in deciding the earlier appeal, we held that there had been no error at the original sentencing trial with regard to evidence and instructions, so that the jury's recommendation was valid and a new jury recommendation was not required. Therefore, the trial court's decision on remand not to convene a jury was in keeping with our mandate and was proper."

*Lucas,* 490 So.2d at 945 (quoting *Menendez,* 419 So.2d at 314).

The Supreme Court of Florida has also recognized that, when both mitigating and aggravating circumstances are present, "we must guard against any unauthorized aggravating factor going into the equation which might tip the scales of the weighing process in favor of death."[9] *Elledge,* 346 So.2d at 1003.

## II.

When the Florida Supreme Court fails to recognize a constitutional error in the trial court's instructions to the jury at the close of the sentencing phase of the trial and the Supreme Court, on certiorari, decides to review those instructions, three dispositions are possible. First, the Court could find the

---

9. The Supreme Court of Florida has affirmed death sentences despite the *trial judge's* erroneous consideration of certain aggravating circumstances but only when no mitigating circumstances were found. *See Francois v. State,* 407 So.2d 885, 891 (Fla.1981) (per curiam) ("Although the trial court's sentencing errors resulted in the recitation of three statutory aggravating circumstances that were not properly established by the evidence, we find that the sentences of death should still be upheld. Where the consideration of erroneous aggravating circumstances does not interfere with the weighing process prescribed by the statute because there are no mitigating circumstances to weigh, no resentencing is required."), *cert. denied,* 458 U.S. 1122, 102

S.Ct. 3511, 73 L.Ed.2d 1384 (1982); *Shriner v. State,* 386 So.2d 525, 534 (Fla.1980) (per curiam) ("We have here two valid aggravating circumstances counterbalanced by no mitigating circumstances. Since death is presumed in this situation, improper consideration of a nonstatutory factor does not render the sentence invalid. . . ." (footnote omitted)), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); *see also State v. Dixon,* 283 So.2d 1, 9 (Fla.1973) ("When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances. . . ."), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).

error harmless, assuming that the question of harmless error was before the Court, and affirm the judgment. Second, the Court could find the error not harmless and direct that the defendant's death sentence be vacated. Third, the Court could remand the case to the supreme court for further proceedings in which that court could, among other things, find the error harmless. The Court chose this last disposition in *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (per curiam), and, on remand, the Florida Supreme Court found the constitutional error harmless, *Espinosa v. State*, 626 So.2d 165, 167 (Fla.1993).

In *Espinosa*, the Supreme Court held that the trial judge's charge to the jury at the close of the penalty phase of Espinosa's trial failed to circumscribe the jury's application of the "especially heinous, atrocious, or cruel" (HAC) aggravating circumstance as required by the Court's precedent, namely *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (striking down the "outrageously or wantonly vile, horrible and inhuman" aggravating circumstance in the Georgia death penalty statute), and *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (invalidating the "especially heinous, atrocious, or cruel" aggravating circumstance of the Oklahoma capital sentencing statute), which made clear that a jury instruction on such an aggravating circumstance that merely repeats the words of the statute would be inadequate. Because no findings accompanied the jury's recommendation of death, the Court "presume[d]" that the jury had weighed the invalid factor in reaching its decision and concluded that the trial judge indirectly weighed the invalid factor in giving the required "great weight" to the jury's recommendation. *Espinosa*, 505

U.S. at ——, 112 S.Ct. at 2928. In other words, the possibly tainted thumb remained on the death side of the scale during the trial judge's decisionmaking process. The Court then remanded the case for further proceedings to the Supreme Court of Florida, which had previously found no error in the HAC instruction, *see Espinosa v. State*, 589 So.2d 887, 894 (Fla.1991), *rev'd*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854.

This disposition allowed the supreme court to choose one of the three alternatives outlined above—affirm the sentence after harmless error analysis; resentence the defendant and render the error inoperative; or grant a new sentencing proceeding, or impose a life sentence, after finding the error not harmless. The court followed the first course, *see Espinosa v. State*, 626 So.2d 165, 167 (Fla. 1993) (ruling that Espinosa's HAC instruction claim was procedurally barred because he had challenged the HAC factor rather than the instruction itself and, alternatively, that any error in the instruction was harmless beyond a reasonable doubt), *cert. denied*, —— U.S. ——, 114 S.Ct. 2184, 128 L.Ed.2d 903 (1994), and affirmed Espinosa's sentence.

The majority argues that *Espinosa* created a "new rule" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), by holding that "a *trial* judge in a trifurcated sentencing procedure may not cure the jury's consideration of an invalid circumstance if, as in Florida, the trial judge owes the jury deference." *Ante* at 3636. What the *Espinosa* Court actually stated was: "[I]f a weighing State decides to place capital-sentencing authority in two actors rather than one, neither actor must be permitted to weigh invalid aggravating circumstances."[10]

---

**10.** This statement from *Espinosa* must be interpreted in light of the Court's holdings that (1) the HAC instruction was unconstitutional based on *Godfrey* and *Maynard* and (2) the jury's weighing of an invalid aggravating circumstance may have violated the Eighth Amendment. If, by this statement, the Court meant to preclude harmless-error analysis at either the trial or appellate level in state court, as the majority implies in the passage quoted above, then the Court must have prescribed a prophylactic rule of prospective application: Notwithstanding that the error may be harmless, or that the court may have rendered

the error inoperative by resentencing the defendant, the sentence must be set aside. That the Court intended to fashion a prophylactic rule is unlikely given *Espinosa*'s citation to *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), which approved of post-remand harmless-error analysis or independent reweighing of aggravating and mitigating circumstances at the appellate level, and its remand to the Supreme Court of Florida for further proceedings, which permitted that court to pursue such options. In sum, nowhere in the *Espinosa* opinion does the Court preclude state appellate

505 U.S. at ——, 112 S.Ct. at 2929. This statement does not create a new rule, but simply describes the *consequences* of the Court's decision; it is a "red flag"—a warning that the Court will take the same action in similar cases that it took in *Espinosa*. Thus, if a jury's recommendation of death appears to have been influenced by an unconstitutional instruction, the placement of the thumb on the death side of the scale may be in error; then if the trial judge sentences the defendant with the thumb remaining on the death side, the State cannot argue—as Florida did in *Espinosa*—that the trial judge sentenced the defendant without regard to the jury's recommendation and thereby cured the error.

A careful reading of the Court's opinion reveals that *Espinosa* constitutes nothing more than an application of well-settled principles.[11] The Court exercised traditional appellate review in considering whether the Supreme Court of Florida had erred in upholding the HAC instruction. In declaring the Florida HAC instruction unconstitutional, the Court simply applied the law as announced initially in *Godfrey* and later reaffirmed in *Maynard*. The Court's conclusion—that the invalid instruction may have tainted the jury's death penalty recommen-

dation and the trial judge's sentence—merely acknowledged what the Supreme Court of Florida has been holding for years.[12] Finally, in remanding the case to the supreme court with the options set forth above, the Court was not announcing a new constitutional rule but was disposing of a case by a method that appellate courts everywhere have used for ages.

## III.

In the case at issue, Glock made two motions in limine for an expanded HAC instruction, which incorporated language from *State v. Dixon*,[13] 283 So.2d 1, 9 (Fla.1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), to give the jury more guidance beyond the bare language of the statute. The trial judge denied both motions, and his resulting jury instruction failed to narrow the HAC aggravating circumstance as required by the same Supreme Court precedent that the *Espinosa* Court relied on in striking down an equally vague HAC instruction. As in *Espinosa*, the jury returned a recommendation of death, and the trial judge, after giving the recommendation "great weight" as required by Florida law, sentenced Glock to death.[14]

courts or *trial judges* from eliminating the prejudice that may have been produced by an unconstitutional jury instruction. For example, if the use of an unconstitutional instruction is brought to the trial judge's attention following the return of the jury's recommendation but before the sentence is imposed, the judge can either concede the error in the challenged jury instruction, or assume arguendo the presence of the error, and consider whether the error is harmless. If the error is deemed harmless, then the judge can accept the jury's recommendation.

**11.** A good indication that *Espinosa* did not create a new rule, but merely applied well-settled principles in the context of traditional appellate review, is that the Court announced its decision in a per curiam opinion, without granting certiorari and without holding oral argument. 505 U.S. at ——, 112 S.Ct. at 2929.

**12.** This court recognized the potential taint produced by an invalid jury instruction several years earlier in *Mann v. Dugger*, 844 F.2d 1446, 1453 (11th Cir.1988) (en banc) ("[I]f the jury's recommendation is tainted, then the trial court's sentencing decision, which took into account that recommendation, is also tainted."), *cert. denied*,

489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989).

**13.** The Supreme Court's rejection of a facial challenge to the HAC aggravating circumstance in *Proffitt v. Florida*, 428 U.S. 242, 255, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976) (plurality opinion), was predicated in part on the narrowing construction provided by this language from *Dixon*.

**14.** In *Espinosa*, the trial judge relied on the HAC aggravating circumstance in fashioning the defendant's sentence. In Glock's case, however, the trial court did not explicitly rely on the HAC aggravating circumstance because the facts that would support a finding of the HAC circumstance were the same as those that would support a finding of the "cold, calculated, and premeditated" (CCP) aggravating factor, which the trial court believed was more appropriate. Whether the court relied on the HAC aggravating circumstance is irrelevant; what is important is that the jury received, and may have relied on, the unconstitutional HAC instruction in recommending the death penalty. Thus, in Glock's case, as in *Espinosa*, the erroneous HAC instruction may have tainted the jury's recommendation and ultimately Glock's sentence.

Unlike the defendant in *Espinosa*, howeverer, Glock did not challenge the HAC instruction on direct appeal to the Supreme Court of Florida.[15] *See Puiatti v. State*, 495 So.2d 128, 132 (Fla.1986) (per curiam), *vacated in part*, 481 U.S. 1027, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987) (Puiatti's judgment vacated and case remanded in light of *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987)). Accordingly, the court affirmed his sentence without considering the constitutionality of the instruction. Glock did challenge the HAC instruction in his Rule 3.850 motion to the trial court, but the court rejected his claim on the merits. *See Glock v. Dugger*, 537 So.2d 99, 101 (Fla.1989) (per curiam). On appeal, the Supreme Court of Florida likewise found no error in the instruction and affirmed the trial court's denial of relief. *See id.* at 102.

We are now presented with the same issue that the Supreme Court addressed in *Espinosa*—whether the HAC instruction was constitutional. The instruction was, of course, as the majority readily concedes, unconstitutional under the same precedent that the Court relied on to set aside Espinosa's sentence. Furthermore, we cannot determine what impact the invalid instruction had on the jury's recommendation and therefore on

the trial judge's sentence. If we were standing in the shoes of the Supreme Court on direct review, we would reject the Florida Supreme Court's decision upholding the instruction and remand the case for further proceedings—giving that court the same options the Supreme Court gave it in *Espinosa*. Because we are considering the HAC challenge in a collateral proceeding, however, we cannot remand the case to the Supreme Court of Florida. Rather, we can only direct the district court to issue a writ of habeas corpus setting aside Glock's death sentence unless Florida grants him a new sentencing proceeding.[16]

Although the trial judge's HAC instruction cannot be squared with the holdings of *Godfrey* and *Maynard*, which the trial judge was bound to follow, the majority would uphold Glock's death sentence. As noted above, the majority believes that *Espinosa*'s conclusion that the HAC instruction may have tainted Glock's sentence constitutes a "new rule" under *Teague*, which precludes us from applying such a rule in this case.[17] According to the majority, Glock's sentence passes muster under the constitutional rules in effect when Glock's sentence became final on December 29, 1986;[18] thus, the district court properly

---

The trial judge weighed the statutory mitigating circumstance of Glock's lack of a significant criminal history as well as nonstatutory mitigating circumstances including his cooperation with the police investigation and his capacity for rehabilitation, but found that the mitigating evidence did not outweigh the aggravating circumstances.

15. If Glock had filed a petition for, and been granted, certiorari, his case would have presented itself in the same procedural posture as *Espinosa*.

16. In theory, we have four options: (1) review the record to determine whether the invalid HAC instruction constitutes harmless error; (2) assume that the erroneous instruction poisoned the death sentence and issue the writ, as the panel did in this case; (3) certify a question to the Supreme Court of Florida, as the Supreme Court did in *Zant v. Stephens*, 456 U.S. 410, 416–17, 102 S.Ct. 1856, 1859, 72 L.Ed.2d 222 (1982) (per curiam), asking the supreme court for the premise of its rejection of Glock's challenge; or (4) instruct the district court "to enter an order directing the State of Florida to initiate appropriate proceedings in state court so that [Glock's] death sentence may be reconsidered in the light of the [unconstitutional HAC instruction]," as the

Supreme Court mandated in *Parker v. Dugger*, 498 U.S. 308, 323, 111 S.Ct. 731, 740, 112 L.Ed.2d 812 (1991). The first option is not available because the State did not urge us to find harmless error regarding the HAC instruction until it filed its petition for rehearing en banc; the State therefore waived the point. The third option is precluded by this court's rejection of my suggestion to certify a similar question in *Ford v. Strickland*, 696 F.2d 804, 834–44 (11th Cir.) (en banc) (Tjoflat, J., concurring in part and dissenting in part), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Thus, only the second and fourth options are available in this case. As for the fourth option, I have found no case that has adopted the *Parker* Court's disposition.

17. The majority acknowledges, however, that if *Espinosa* applied, Glock's death sentence would have to be set aside.

18. In *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994), the Court defined finality as follows: "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhaust-

rejected the HAC challenge in Glock's habeas petition.

Drawing on the finality-of-conviction analysis from *Teague* and *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994), the majority has frozen Glock's sentencing proceeding in time by considering only the Florida courts' treatment of the HAC challenge before his conviction became final. Thus, as to the HAC instruction claim, the trial judge had the last word.[19] In examining the propriety of the trial judge's treatment of that claim, the majority applies the law as it believes a Florida sentencing judge would have perceived it prior to December 29, 1986 to determine what *a court* could do, consistent with the Eighth Amendment, to save a sentence arguably tainted by a constitutionally suspect jury recommendation.

Drawing on precedent in which the Supreme Court remanded a capital case to the state high court for resentencing or harmless error analysis [20] to eliminate the effect of any constitutional error in the jury function, the majority concludes that a Florida trial judge could have resentenced a defendant without regard to the jury's recommendation. The majority uses dicta indicating that particular state courts failed to cure constitutional errors [21] as evidence that *all* state courts *could* cure such errors. The majority's logical leap, however, ignores that this power is a question of state law rather than federal constitutional law. In short, simply because the Supreme Court allows a state high court the opportunity to resentence does not mean that the state court—trial or appellate—has the authority to do so.

Whether the state court can, on remand, save a death sentence by declaring the error harmless or by resentencing depends, of course, on what the state law authorizes the court to do.[22] Obviously, the court can un-

---

ed and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." For Glock, this date is December 29, 1986, when his time for filing a petition for certiorari expired.

19. The majority focuses on the trial judge because it treats the post-conviction Rule 3.850 proceedings as if they never occurred. Nevertheless, by considering an argument on collateral attack that should have been raised on direct appeal, the Supreme Court of Florida's review of the merits of Glock's HAC instruction claim effectively reopened his direct appeal. The supreme court has previously permitted the use of collateral attacks to entertain, and grant relief on, issues that should have been raised on direct appeal. *See, e.g., Thompson v. Dugger*, 515 So.2d 173, 175 (Fla.1987) (per curiam) (allowing petitioner to bring a *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) claim under Rule 3.850 despite State's assertion of procedural default), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1224, 99 L.Ed.2d 424 (1988); *Riley v. Wainwright*, 517 So.2d 656, 659 (Fla.1987) (same); *O'Malley v. Wainwright*, 237 So.2d 813, 817 (Fla.2d Dist.Ct.App.1970) ("The Supreme Court of Florida in *Baggett v. Wainwright*, [229 So.2d 239 (Fla.1969)], held that in certain instances habeas corpus may be utilized to obtain the equivalent of a direct appeal.").

20. In *Clemons*, the Court stated that "the Federal Constitution does not prevent a state *appellate court* from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by

harmless-error review;" the Court then remanded the case because there was no indication whether the Mississippi Supreme Court had correctly used either method. 494 U.S. at 741, 110 S.Ct. at 1444 (emphasis added).

21. In *Godfrey*, the Court noted that "[t]he standardless and unchanneled imposition of death sentences in the uncontrolled discretion of a basically uninstructed jury in this case was in no way cured by the affirmance of those sentences by the Georgia Supreme Court." 446 U.S. at 429, 100 S.Ct. at 1765. Similarly, in *Maynard*, the Court stated that the Oklahoma trial judge's conclusion that the facts of the case supported the jury's finding that the murder was especially heinous, atrocious, or cruel "did not cure the constitutional infirmity of the aggravating circumstance." 486 U.S. at 364, 108 S.Ct. at 1859.

22. For example, on remand in *Clemons*, the Mississippi Supreme Court stated:

There is no authority for this Court to reweigh remaining aggravating circumstances when it finds one or more to be invalid or improperly defined, nor is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing. Finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence are, by statute, left to a properly instructed jury.

593 So.2d at 1006. Similarly, in *Maynard*, the Court noted that Oklahoma had no provision for appellate resentencing. *See* 486 U.S. at 365, 108 S.Ct. at 1859–60.

dertake harmless-error analysis because the law of every state, as a matter of traditional appellate review, provides for harmless-error analysis. What remains unclear, however, is whether Florida law would have permitted its trial judges to resentence a defendant notwithstanding a tainted jury recommendation of death. If state law permits such resentencing, then implicitly the defendant's right to an untainted jury recommendation or verdict does not extend to the high court level.[23]

In upholding the trial judge's resentencing, however, the majority ignores both the unique dictates of Florida law, which ensure the defendant the right to a jury recommendation in capital cases, and what actually occurred when the trial judge sentenced Glock to death. Although the trial judge did not explicitly rely on the HAC factor in his sentencing order,[24] the majority does not consider that the trial judge nonetheless permitted the thumb to remain on the death side of the scale during his decisionmaking pro-

cess. The judge did not remove the thumb because: (1) he saw no need to remove it, i.e., he perceived no taint in the jury's recommendation;[25] and/or (2) he was compelled by Florida law to give the jury's recommendation "great weight."

The majority misinterprets Florida law in concluding that a trial judge can resentence the defendant regardless of the jury's recommendation and thereby nullify the effect of any constitutional error in the jury instructions. Florida law gives the defendant the right, indeed a due process right,[26] to seek a life recommendation from the jury, to which the trial judge must give "great weight." *See Tedder*, 322 So.2d at 910. By disregarding the jury's recommendation in order to remove the potential taint, the trial judge would violate state law.[27] According to long-standing principles of common law and federal jurisprudence, we must presume that judges know and follow state law. *See, e.g., Espinosa*, 505 U.S. at ——, 112 S.Ct. at 2928

---

**23.** In *Spaziano v. Florida*, 468 U.S. 447, 459, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984), the Court held that the Sixth Amendment does not require that a jury determine the sentence in a capital case so that appellate resentencing is permissible from a constitutional standpoint. Thus, *Spaziano* simply made explicit what the Court's decisions had previously made implicit. Nevertheless, rights to jury participation in capital sentencing under state law were not affected by *Spaziano*.

**24.** *See supra* note 14.

**25.** The record supports this assertion because the trial judge *never* recognized that the HAC instruction was unconstitutional. He rejected the more elaborate instruction proposed in Glock's motions in limine. In addition, his sentencing findings do not mention any error, harmless or otherwise, in the instruction.

**26.** Under Florida law, the right to a jury in the sentencing phase of a capital case is a due process right. *Cf. Cotton v. State*, 85 Fla. 197, 95 So. 668, 670 (1923) ("Denial to [the defendant] of this right [to a jury of the number prescribed by law] by the court results in a lack of the due process of law that is commanded by the Constitution [of Florida].").

**27.** This deprivation of the right to a jury recommendation would not create an Eighth or Fourteenth Amendment issue. *See Harris v. Alabama*, —— U.S. ——, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (holding that the "great weight" attached

to a jury recommendation of life under *Tedder* is not a constitutional requirement). Florida law could be changed to eliminate the "great weight" requirement either by a decision of the Supreme Court of Florida or by legislation. During the 1995 legislative session, bills were introduced in both the House (H.B. 1319) and the Senate (S.B. 1846) to amend § 921.141 such that the jury's recommendation would be purely advisory and the trial judge would owe no deference to the jury. H.B. 1319, which passed both the House and the Senate, amended § 921.141(2) to clarify that the jury renders "a nonbinding advisory recommendation" rather than "an advisory sentence," and amended § 921.141(3) to read as follows:

> Following the return of the jury's nonbinding advisory recommendation, the court shall make an independent weighing of the aggravating and mitigating circumstances and determine the appropriate sentence. The jury's nonbinding advisory recommendation shall be used solely for the purpose of apprising the trial judge and appellate court of the jury's reaction to the evidence of aggravation and mitigation as a matter of information.

Governor Lawton Chiles vetoed H.B. 1319 on June 14, 1995. Had these amendments been enacted into law, the Florida jury's recommendation would no longer place a thumb on one side of the trial judge's sentencing scale. Rather, the jury in Florida would have the same nonbinding advisory role as that of an Alabama jury. *See* Ala.Code §§ 13A–5–46(e), 13A–5–47(e); *see also Harris*, —— U.S. at ——, 115 S.Ct. at 1033–34.

("[W]e must further presume that the trial court followed Florida law and gave 'great weight' to the resultant recommendation." (citations omitted)); *Walton v. Arizona*, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."). Furthermore, neither the sentencing order nor the transcript of the sentencing hearing contains any indication that the trial judge ignored the jury's recommendation. In sum, the majority's conclusion that the trial judge resentenced Glock is unsound in law—as it existed in Florida at any time before or after December 29, 1986—and unsound in fact.

In conclusion, the majority seeks to avoid the consequences of an Eighth and Fourteenth Amendment violation during the jury trial phase of Glock's sentencing proceeding by holding that the trial judge resentenced Glock without being influenced by the error. The majority does so by depriving Glock of his due process right under the Florida Constitution to pursue a jury recommendation of life imprisonment. Were the Florida Supreme Court, in reviewing Glock's sentence, to follow this course—trading one constitutional right for another—we would, I submit, be quick to condemn such action.

I respectfully dissent.