**Paul Edward TEEL, Petitioner,**

v.

**Larry BURTON, et al., Respondents.**

**Civ. A. No. 92–T–1347–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 18, 1995.

Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for plaintiff Paul Edward Teel.

Paul David Bjurberg, Arthur Frank Patterson, Jr., Office of the Attorney General, Montgomery, AL, for defendants James H. Evans, Attorney General of the State of Alabama, Larry Burton, Warden, Jeff Sessions, Attorney General for the State of Alabama.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Petitioner Paul Edward Teel initiated this lawsuit under 28 U.S.C.A. § 2254 seeking habeas corpus relief from his 1990 state conviction for the unlawful distribution of marijuana, for which he received life imprisonment. Teel claims he was tried in his absence in violation of the sixth and fourteenth amendments to the United States Constitution. Respondent state officials contend that Teel waived his right to be present because he was voluntarily absent. This lawsuit is before the court on the recommendation of the United States Magistrate Judge that Teel be granted habeas corpus relief and on objections filed by the respondents. For the reasons that follow, the court agrees with the Magistrate Judge.

## I. PROCEDURAL BACKGROUND

Teel was convicted on March 2, 1990, in the Circuit Court of Covington County, Alabama of the unlawful distribution of marijuana, a controlled substance. Because he was a habitual offender, he was sentenced to life imprisonment. His conviction and sentence were affirmed on appeal on September 21, 1990, and the state courts later rejected his collateral challenges. Teel filed his petition for writ of habeas corpus in federal court on October 26, 1992, asserting a number of claims. The Magistrate Judge conducted an evidentiary hearing on July 28, 1994, and at the hearing and in his post-hearing brief, Teel waived all claims but his claim that he was unconstitutionally tried in his absence. The respondents admit that Teel presented this claim to the state courts and thus has exhausted his state court remedies. On March 20, 1995, the Magistrate Judge recommended that habeas corpus relief be granted, and on April 3, 1995, the respondents objected to the recommendation.

## II. FACTS

The facts as gleaned from the state court proceedings and the evidentiary hearing held before the Magistrate Judge are as follows. Teel is from Pensacola, Florida.[1] The charge for unlawful distribution of marijuana was brought in state court in the city of Andalusia, Covington County, Alabama.[2] Because he was indigent, the state judge appointed an attorney to represent him.[3]

Teel's trial was initially set for Monday, February 26, 1990, in Andalusia. Teel was present in court but his case was not called, and his trial was reset for Wednesday, February 28.[4] On Wednesday, Teel was again present but the trial was rescheduled, this time for Friday, March 2.[5] In the meantime, Teel filed a motion challenging his competency to stand trial and the motion was heard and denied on Thursday, March 1, with Teel again present in court.[6] During the Thursday hearing, the state judge reminded Teel that his trial was to begin on Friday, the next day. The delays in Teel's trial were due, at

---

1. Transcript of July 28, 1994, evidentiary hearing before the Magistrate Judge at 33, filed on August 23, 1995.

2. Record of state court proceedings at 1, filed as part of respondents' answer on November 17, 1992.

3. *Id.* at 5.

4. Trial transcript of state court proceedings at R–6, filed as part of respondents' answer on November 17, 1992.

5. *Id.* at R–6–7.

6. *Id.* at R–7.

least in part, to other matters pending in the state court.[7]

After the Thursday hearing, Teel, his mother, and his girlfriend realized that they were in desperate financial condition as a result of the delays in beginning Teel's trial. The only place for them to stay in Andalusia was a house in which Teel had been staying off and on. The house was without heat, electricity, and water.[8] Teel's mother had slept in the back seat of her car.[9] The trial delays had left him and his family with no food and they were down to their last $6.00.[10] They had enough money for either one more night in Andalusia or a trip back to their home in Pensacola. In other words, if either he or his family stayed another night in Andalusia, no one could return to Pensacola and they would all be stranded in Andalusia without money for food or travel, and in particular without money for a return trip to Pensacola. Teel's mother was expecting to receive a public assistance check at her home on Friday, which would have given them the money to buy food and return to Andalusia the following Monday. In addition, because of the delays in Teel's trial, his family needed to return to Pensacola to care for Teel's invalid brother, who had been left alone.[11] Teel told his court-appointed attorney about the financial predicament the delays in his trial had caused, and of his need to return Pensacola.[12]

Teel returned to Pensacola with his family to wait for his mother's public assistance check. Without it they had no money to return to Andalusia.[13] For reasons that are not clear from the record, Teel's court-appointed attorney did not inform the state court that Teel had had to return to Pensacola for lack of money.[14] He did, however, object in general to the trial being held in Teel's absence, but the objection was overruled.[15] Therefore, although Teel had appeared for each court proceeding beginning on Monday, when his case was initially called, through Thursday, he was not present for his trial on Friday, and he was tried and convicted entirely in his absence.[16] The trial lasted only a few hours, and the jury deliberated for only 12 minutes before returning its guilty verdict.[17] Prior to beginning Teel's trial, the state judge directed no investigation into why Teel was suddenly absent beyond merely confirming that Teel was not present in the court house.[18]

---

7. *Id.* at R–4–5.

8. Transcript of July 28, 1994, evidentiary hearing before the Magistrate Judge at 44–45, filed on August 23, 1995.

9. *Id.* at 42.

10. *Id.* at 53.

11. *Id.* at 34–35, 60–61.

12. *Id.* at 34–35.

13. *Id.* at 61.

14. In a deposition filed with this court, Teel's court-appointed attorney admitted that Teel told him he had to return to Pensacola. July 11, 1994, deposition of court-appointed attorney at 7, filed on July 21, 1994. However, for reasons which are not clear, the court-appointed attorney told the judge at the state trial that he had had no contact with Teel since the competency hearing the previous day and that he had no idea where Teel was. Trial transcript of state court proceedings at R–8, filed as part of respondents' answer on November 17, 1992.

15. Trial transcript of state court proceedings at R–4, filed as part of respondents' answer on November 17, 1992.

16. *Id.* at R–9–61. At the beginning of the trial, the state court informed the jury that Teel's absence was unexcused. *Id.* at 9–10. It therefore appears that Teel's unexcused absence was a factor the jury was allowed to consider in determining his guilt. *Contrast Taylor v. United States*, 414 U.S. 17, 18, 94 S.Ct. 194, 195, 38 L.Ed.2d 174 (1973) (per curiam) (in upholding trial in voluntary absence of defendant, Court noted that, "Throughout the remainder of trial, the [trial] court admonished the jury that no inference of guilt could be drawn from [defendant]'s absence").

17. *Id.* at R–60.

18. *Id.* at R–6–7. In his deposition, the state judge stated that two deputies had mentioned that Teel had absented himself because he did not want to sit with his court-appointed attorney at trial. July 11, 1994, deposition of state judge at 10, filed on July 21, 1994. However, because he conducted no hearing on the matter, the state judge later admitted that he had "no earthly idea why [Teel] didn't show up." *Id.* at 26. And the respondents did not call these deputies as witnesses before the Magistrate Judge or otherwise pursue the matter.

Teel was later sentenced to life imprisonment as a habitual offender.[19] And, as was true at the initial setting of his trial, Teel was voluntarily present for his sentencing.[20]

### III. DISCUSSION OF THE LAW

Teel contends that his right to be present at trial arising under both the sixth and fourteenth amendments was violated when he was tried in his absence. The respondents contend that Teel waived his right to be present by not returning for his trial.

#### A. The Right to be Present at Trial

■ The Supreme Court has long held that a criminal defendant has the constitutional right to be present at his trial. This right is grounded in both the confrontation clause of the sixth amendment and the due process clause of the fourteenth amendment. Under the sixth amendment, incorporated against the states by the fourteenth amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), a defendant has the right to confront the witnesses against him, and this right is satisfied by the defendant's presence at trial. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Indeed, "[o]ne of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Id.* Under the due process clause of the fourteenth amendment, the presence of the defendant is required in order to ensure that the proceedings are fair, and the defendant has a right to be present unless his presence would be "useless, or the benefit but a shadow." *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 106–107, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). *See also Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (defendant guaranteed the right to be present if his presence would contribute to the fairness of the procedure); *Proffitt v. Wainwright,* 685 F.2d 1227, 1260, n. 49 (11th Cir.1982) (the right to be present "is a fundamental consti-

tutional right"), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).

The respondents in this case concede, as they must, that a criminal defendant has the right, in general, to be present at trial, but they contend that Teel's absence from his trial operated as a "constructive waiver" of his right to be present.

#### B. Waiver of the Right to be Present at Trial

■ Generally, a waiver of a constitutional right must be "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The respondents do not contend that Teel "expressly" waived his right to be present. Rather, they contend that his failure to appear at trial was a "constructive" waiver.

#### 1. Constructive Waiver by Voluntary Act

■ Under certain circumstances, a defendant may be deemed to have waived his right to be present by a constructive waiver. For example, if he disrupts the proceedings, the trial court may find a constructive waiver, remove him from the courtroom, and conduct the trial in his absence, *Allen,* 397 U.S. at 343, 90 S.Ct. at 1061; the defendant may, however, reclaim the right to be present as soon as he is "willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.* at 344, 90 S.Ct. at 1061. The defendant's presence is within his control; he may behave and stay or misbehave and be removed. Similarly, a defendant who is voluntarily absent after his trial has begun may also be deemed to have waived his right to be present. If the defendant is present for jury selection and the beginning of the trial and then "flees," the court may find a constructive waiver and conduct the rest of the trial in his absence. *Taylor v. United States,* 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam).

---

**19.** Record of state court proceedings at 44–45, filed as part of respondents' answer on November 17, 1992.

**20.** Transcript of July 28, 1994, evidentiary hearing before the Magistrate Judge at 38, filed on August 23, 1995; July 11, 1994, deposition of court-appointed attorney at 8, 15–16, filed on July 21, 1994.

Both misbehavior and flight during trial may equal constructive waivers because they result from voluntary actions of the defendant. In neither case is something entirely beyond the defendant's control taken to be a waiver of his right to be present at trial.

The issue for this court, therefore, is whether Teel's absence was voluntary and thus was a constructive waiver of his right to be present at his trial. If Teel's absence was not truly voluntary or within his control, then trying him in his absence was a violation of his right to be present.[21]

### 2. Whether Teel's Absence Was Voluntary

■ At the beginning of Teel's trial, the state judge stated that Teel was voluntarily absent because, the day before, Teel had been instructed to be present and he was not. The state judge's conclusion was not based on any actual evidence; the trial court did not hold a hearing on the matter either before or after the incident. As the trial judge admitted later during a deposition, he had "no earthly idea why [Teel] didn't show up."[22]

In fact, Teel was absent because the delays in his trial had left him without the funds necessary to continue to stay in Andalusia, where his trial was to begin, and because, as a further result of the delays, his family had to return to his invalid brother. As stated, after the sanity hearing on Thursday, he and his family were out of food and were down to their last $6.00. They had no real choice but to return to their home in Pensacola to obtain more money.

The circumstances presented in Teel's case differ dramatically and critically from those presented in *Allen* and *Taylor*, where the Supreme Court found constructive waivers; in those cases, the defendants' absences were caused by something within their control. Here, Teel's absence was not a waiver of his right to be present because it was compelled by the delays in the beginning of his trial and by his poverty, two matters which were beyond his control. Teel's absence from his trial was not voluntary. There was no constructive waiver. Trying him in his absence, therefore, violated his right to be present, as guaranteed by the sixth and fourteenth amendments.[23]

### C. Teel's Indigence

■ The court has found that Teel's sixth and fourteenth amendment rights were violated because he was tried when he was involuntarily absent. There exists a separate but equally important reason that Teel's constitutional rights were violated. One of the United States Constitution's clearest mandates is that a criminal defendant may not be disadvantaged in the criminal process on account of his poverty.

■ In *Ake v. Oklahoma,* 470 U.S. 68, 76, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985), the Supreme Court wrote: "This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." A

---

21. The respondents do not contend, and there is no evidence, that Teel expressly waived his right to be present at his trial.

22. July 11, 1994, deposition of state judge at 26, filed on July 21, 1994.

23. The respondents argue that the trial judge stated that, "Naturally if he were to happen to come in with a real good excuse we might entertain a motion, but it's going to have to be a good one." Trial transcript of state court proceedings at R–61, filed as part of respondents' answer on November 17, 1992. The respondents omit to add that the state judge made this comment during Teel's trial and thus *in his absence. Id.* Thus, because of his involuntary absence resulting from the delays in his trial and his poverty, Teel did not hear this important offer. There is nothing in the record to indicate that the trial judge repeated this important offer in Teel's presence or that Teel was otherwise made aware of it. In any event, it was incumbent on the state trial court to obtain an express waiver from Teel, or to determine that there had been a constructive waiver.

poor criminal defendant, in other words, must have the same "opportunity to participate meaningfully in a judicial proceeding at which his liberty is at stake" as a wealthy defendant. *Id.*

Here, Teel is not a poor defendant asking for something that is not essential or critical and on which a wealthy defendant, in his discretion, might choose to spend his money. Instead, he is asking for "[o]ne of the most basic rights guaranteed by the Confrontation Clause," *Allen,* 397 U.S. at 338, 90 S.Ct. at 1058: his "right to be present in the courtroom at every stage of his trial." *Id. See also Hall v. Wainwright,* 805 F.2d 945, 946 (11th Cir.1986) ("The right of a criminal defendant to be present at all critical stages of his trial is a fundamental constitutional right") (citation omitted), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Teel was denied the opportunity to be present at his trial because of his poverty—that is, the delays in beginning his trial had left him without funds. A state "cannot make lack of means an effective bar to the exercise of this opportunity." *Griffin v. Illinois,* 351 U.S. 12, 24, 76 S.Ct. 585, 593, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring).

### D. *Whether Teel Was Prejudiced*

A finding of a constitutional violation does not end the inquiry. Teel is not entitled to relief unless he suffered some prejudice from the violation.

▋▋▋ Whether a habeas petitioner is entitled to relief for a violation of his right to be present at trial or because of indigence is subject to a harmless-error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Here, where the issue is whether a defendant was prejudiced by his absence from his trial,

"[a]n assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation." *Coy v. Iowa,* 487 U.S. 1012, 1021–1022, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). "[H]armlessness must therefore be determined on the basis of the remaining evidence." *Id.* at 1022, 108 S.Ct. at 2803. Therefore, in determining whether the violation was harmless, the reviewing court may consider only the evidence adduced with the defendant present. The court must determine whether there was harmless error based only on that evidence.

▋▋▋ Whether, within the *Coy* limitation, the test for harmless error is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict,'" *Brecht v. Abrahamson,* 507 U.S. 619, ——, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)), or whether the error was "harmless beyond a reasonable doubt," *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), makes no difference.[24] Because Teel was absent for the entire trial, there was no evidence adduced in his presence. Under the teaching of *Coy,* the violation was clearly prejudicial because if no evidence had been presented to the jury it could not have convicted him. Therefore the error clearly had a substantial or injurious effect on the verdict and was not harmless beyond a reasonable doubt. *Contrast Hoversten v. Iowa,* 998 F.2d 614, 617 (8th Cir.1993) (court found remaining evidence insufficient to support conviction), *with Christian v. Rhode,* 41 F.3d 461, 468 (9th Cir.1994) (court found remaining evidence "overwhelming" and sufficient to support conviction).[25]

---

**24.** In *Hoversten v. Iowa,* 998 F.2d 614 (8th Cir. 1993), the appellate court raised the question of whether the *Brecht* test might not apply in all cases. *Id.* at 617.

**25.** Moreover, even in the absence of the *Coy* limitation—that is, if the evidence adduced outside Teel's presence were considered—the conclusion would be the same. The case against Teel was based on a conversation he had with

Officer Coleman in which only they were present. Although a tape recording of their conversation was played for the jury, Officer Coleman testified and explained to the jury what was happening in the conversation and what he and Teel meant by what they were saying on the tape. Teel's absence was harmful under these circumstances because only he would be able to provide a non-criminal explanation of what he meant by what he said in the recorded conversations.

In conclusion, the court finds that Teel was prejudiced by his absence from his trial.

### E. The Teague Issue

In his recommendation, the Magistrate Judge wrote that a court "should not impute waiver of a constitutional right of presence merely because a defendant fails to appear for trial."[26] He drew a distinction between a defendant who is absent *before* his trial begins and one who absents himself *during* his trial, and concluded that the former could not be tried at all without an "express" voluntary waiver.[27] The Magistrate Judge implicitly also concluded that such a defendant could never "constructively" waive his right to be present at his trial. The Magistrate Judge further wrote that, under the *Coy* prejudice inquiry, it would be "pure speculation" to assess harmlessness in this case because no evidence was adduced in Teel's presence. In their objections to the Magistrate Judge's recommendation, respondents argue that to follow the recommendation would announce two "new rules"—the first being that, absent an express waiver, a defendant who is absent before his trial has begun cannot waive his right to present, and the second being that a defendant who is absent from his entire trial has perforce suffered prejudice—and would therefore violate *Teague v. Lane,* 489 U.S. 288, 299–316, 109 S.Ct. 1060, 1069–78, 103 L.Ed.2d 334 (1989) (plurality opinion).

 *Teague* and progeny teach that a habeas petitioner may only receive the benefit of legal rules which existed at the time of his conviction. *See, e.g., Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Glock v. Singletary,* 65 F.3d 878, (11th Cir. Sept. 8, 1995) (en banc). He may not benefit from a ruling that would constitute a "new rule" unless the ruling fits into one of two exceptions: if it "places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073 (plurality opinion), or "if it requires the observance of those procedures that are implicit in the concept of ordered liberty." *Id.* (citations and internal quotations omitted). A new rule is one which "breaks new ground or imposes a new obligation on the states or the Federal Government," *id.* at 301, 109 S.Ct. at 1070 (plurality opinion), and which is "not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* If the relief requested is dictated by precedent and does not impose a new obligation on the state, the result is not a new rule even though the issue has not been precisely faced before. *Penry v. Lynaugh,* 492 U.S. 302, 318–319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989). Merely applying existing rules to new facts does not make the result a new rule.[28]

**26.** Recommendation of the Magistrate Judge, filed March 20, 1995, at 7.

**27.** To reach this conclusion, the Magistrate Judge relied on *Crosby v. United States,* 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), in which the Supreme Court held that Rule 43 of the Federal Rules of Criminal Procedure does not permit a trial court to try a defendant who is absent at the beginning of his trial. Relying on case law from the Eleventh Circuit, the Magistrate Judge concluded that there is no principled reason to differentiate between a rule-based right and a constitutional right. Recommendation of Magistrate Judge, filed March 20, 1995, at 7.

**28.** The court has concluded that Teel was not voluntarily absent, and thus could not constructively waive his right to be present at his trial. However, even assuming Teel's absence had been voluntary, case law from the former Fifth Circuit Court of Appeals and law from other appellate courts suggest that the state trial court still violated Teel's right because it did not conduct the requisite inquiry before trying him in his absence. In *United States v. Benavides,* 596 F.2d 137, 139 (1979), the former Fifth Circuit stated that the "finding that the defendants' absence was voluntary should not have abruptly ended the court's inquiry." "[T]he court has 'only a narrow discretion' in deciding whether to proceed with a trial when the defendant is voluntarily *in absentia* because the right to be present at one's own trial must be carefully safeguarded." *Id.* The trial court, according to *Benavides,* must engage in some balancing based on the following factors: first, whether the trial could soon take place with the defendant present; second, the difficulty of rescheduling the trial (a factor expected to be more important in multiple defendant cases than in single defendant cases); third, the burden on the government of two trials (again, this factor would likely only be relevant with multiple defendants who would otherwise be tried together); and fourth, the inconvenience to jurors. *Id.* at 139–40. *See also United States v. Beltran–Nunez,* 716 F.2d 287, 291 (5th Cir. 1983); *United States v. Tortora,* 464 F.2d 1202 (2d Cir.1972), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Obviously,

Because, in accepting the recommendation of the Magistrate Judge, this court relies on a more narrow and limited rationale in concluding that Teel's constitutional rights were violated, there is no need to reach respondents' *Teague* objection to that part of the Magistrate Judge's recommendation. In other words, the court does not rely on the Magistrate Judge's conclusion that a defendant who is absent before his trial has begun can waive his right to be present by express waiver only and thus that such a defendant could never "constructively" waive his right to be present at his trial.[29] The court does not have to reach this broader legal conclusion because, assuming that all defendants can constructively waive their right to be present at trial, Teel did not do so here. The court simply relies on the existing rule that a defendant has a right to be present at this trial, and finds no constructive waiver of that right here. This is a fundamental rule with deep roots. Teel had the right to this rule at the time of his trial and conviction and his appeal in 1990, so applying it today is not an impermissible retroactive application under *Teague.* The specific cases the court relies on today are *Snyder,* decided in 1934; *Zerbst,* decided in 1938; *Allen,* decided in 1970; *Taylor,* decided in 1973; and *Stincer,* decided in 1987.[30]

The court also holds that a criminal defendant may not be denied a fundamental constitutional right to be present at his trial on account of his indigence. This is not a new rule, and it does not place any new obligations on the state. To reach this conclusion the court relies on *Griffin,* decided in 1956, and *Ake,* decided in 1985.[31]

The court has finally concluded that Teel was prejudiced because his entire trial took place in his absence. The court reached this conclusion after conducting the harmlessness inquiry mandated by *Coy.* The court must, following *Coy,* consider only the evidence adduced in Teel's presence when it decides whether the constitutional violation prejudiced him. Because no evidence was adduced in Teel's presence, he was clearly prejudiced by his absence. This result neither relies on nor announces a new rule and does not place any new burdens on the state. The specific decisions upon which the court relies to reach this conclusion are *Kotteakos,* decided in 1946; *Chapman,* decided in 1967; *Van Arsdall,* decided in 1986; and *Coy,* decided in 1988.

In conclusion, this court has not announced any new rules but has instead merely fleshed out the facts and concluded, based on the application of long and well-settled law to these facts, that Teel is entitled to habeas corpus relief to the extent of a new trial.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the objections filed by the respondents on April 3, 1995, are overruled;

because the defendant is not present, these factors must be considered in his absence. Here, because the state trial court failed to address any of the *Benavides* factors (and did not seriously attempt to locate Teel), its decision to try Teel in his absence would have violated this circuit's law even if he had been voluntarily absent. *See Beltran–Nunez,* 716 F.2d at 291 (finding that failure to consider the *Benavides* factors warranted reversal of conviction of defendant who was tried in his absence). However, because "courts of appeals do not 'dictate' a particular rule to state courts," *Glock,* 65 F.3d at 883, application of the *Benavides* factors to the Alabama state courts would violate *Teague.*

29. Because the Magistrate Judge relies principally on Eleventh Circuit case law to extend *Crosby*'s holding to apply to the sixth amendment, his conclusion would pose a *Teague* problem.

See *supra* note 27. As the Eleventh Circuit has recently stated, "courts of appeals do not 'dictate' a particular rule to state courts." *Glock,* 65 F.3d at 883.

30. Even if the court's conclusion—that a defendant has a right to be present at his trial, but subject to the authority of the state to recognize a constructive waiver of that right—could be considered a new rule, the rule would fall within the exception for those new rules that are implicit in the concept of ordered liberty.

31. Even if the court's alternative conclusion—that a defendant may not be tried in his absence when his absence is due to this poverty—could be considered a new rule, the rule would also fall within the exception for those new rules that are implicit in the concept of ordered liberty.

(2) That the recommendation of the United States Magistrate Judge entered on March 20, 1995, is adopted; and

(3) That the petition for writ of habeas corpus filed by petitioner Paul Edward Teel is granted to the extent that, unless within 90 days from the date of this order the State of Alabama commences a new trial of petitioner Teel, a writ of habeas corpus shall issue.

It is further ORDERED that costs are taxed against the respondents, for which execution may issue.